## **EXHIBIT B**
Gershbein Declaration

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Medley LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 21-10526 (   ) |

**DECLARATION OF EVAN GERSHBEIN IN SUPPORT OF THE DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND APPOINTMENT OF KURTZMAN CARSON CONSULTANTS LLC AS CLAIMS AND NOTICING AGENT EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**

I, Evan Gershbein, under penalty of perjury, declare as follows:

1. I am an Executive Vice President, Corporate Restructuring Services of Kurtzman Carson Consultants LLC ("KCC"), a chapter 11 administrative services firm whose offices are located at 222 N. Pacific Coast Highway, 3rd Floor, El Segundo, California, 90245. Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2. This Declaration is made in support of the above-captioned debtor's (the "Debtor") *Application for Entry of an Order Appointing Kurtzman Carson Consultants LLC as Claims and Noticing Agent Effective Nunc Pro Tunc to the Petition Date*, which was filed contemporaneously herewith (the "Section 156(c) Application").[2]

3. KCC is a bankruptcy administrator that specializes in providing comprehensive chapter 11 administrative services including noticing, claims processing, solicitation, balloting,

---

[1] The last four digits of the Debtor's taxpayer identification number are 7343. The Debtor's principal executive office is located at 280 Park Avenue, 6th Floor East, New York, New York 10017.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Section 156(c) Application.

and other related services critical to the effective administration of chapter 11 cases. KCC has developed efficient and cost-effective methods to properly handle the voluminous mailings associated with the noticing, claims processing, solicitation, and balloting portions of chapter 11 cases to ensure the orderly and fair treatment of creditors, equity security holders, and all other parties in interest.

4. KCC has acted as the claims and noticing agent in numerous cases of comparable size, including several cases currently pending in the United States Bankruptcy Court for this District. *See e.g., In re Chaparral Energy, Inc.*, Case No. 20-11947 (MFW) (Bank. D. Del. Aug. 18, 2020) [D.I. 75]; *In re HRI Holding Corp., et al.*, Case No. 19-12415 (MFW) (Bankr. D. Del. Nov. 15, 2019) [D.I. 54]; *In re Extraction Oil and Gas, Inc., et al.*, Case No. 20-11548 (CSS) (Bankr. D. Del. June 16, 2020) [D.I. 81]; *In re Skillsoft Corporation, et al.*, Case No. 20-11532 (MFW) (Bankr. D. Del. June 16, 2020) [D.I. 81]; *In re Templar Energy LLC, et al.*, Case No. 20-11441 (BLS) (Bankr. D. Del. June 2, 2020) [D.I. 53]; *In re Akorn, Inc., et al.,* Case No. 20-11177 (KBO) (Bankr. D. Del. May 22, 2020) [D.I. 71]; *In re TZEW Holdco LLC, et al.*, Case No. 20-10910 (CSS) (Bankr. D. Del. Apr. 14, 2020) [D.I. 48]; *In re Valeritas Holdings, Inc., et al.*, Case No. 20-10290 (LSS) (Bankr. D. Del. Feb. 12, 2020) [D.I. 51].[3]

5. As the claims and noticing agent (the "Claims Agent"), KCC will perform, at the request of the Debtor and the Clerk, the services specified in the Section 156(c) Application and the Engagement Agreement (the "Claims and Noticing Services") as well as all quality control relating thereto:

---

[3] The referenced orders are voluminous in nature and, therefore, are not attached to this Section 156(C) Application; however, in accordance with Local Rule 7007-2, the Debtor's proposed counsel has copies of each order and will make them available to this Court or to any party that requests them. Additionally, the orders are available on this Court's CM/ECF PACER site at the cited docket numbers and on the dates specified above.

(a) Prepare and serve required notices and documents in the case in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtor and/or the Court, including (i) notice of the commencement of the case and the initial meeting of creditors under Bankruptcy Code § 341(a), (ii) notice of any claims bar date, (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the Debtor's plan of reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan and (vii) all other notices, orders, pleadings, publications and other documents as the Debtor or Court may deem necessary or appropriate for an orderly administration of the Chapter 11 Case;

(b) Maintain an official copy of the Debtor's Schedules, listing the Debtor's known creditors and the amounts owed thereto;

(c) Maintain (i) a list of all potential creditors, equity holders, and other parties-in-interest; and (ii) a "core" mailing list consisting of all parties described in sections 2002(i), (g), and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update said lists and make said lists available upon request by a party-in-interest or the Clerk;

(d) Furnish a notice to all potential creditors of the last date for the filing of proofs of claim and a form for the filing of a proof of claim, after such notice and form are approved by this Court, and notify said potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(e) Maintain a post office box or address for the purpose of receiving claims, correspondence, ballots, and returned mail, and process all mail received;

(f) For all notices, motions, orders or other pleadings or documents served, prepare and file or caused to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

(g) Process all proofs of claim received, including those received by the Clerk's Office, and check said processing for accuracy, and maintain the original proofs of claim in a secure area;

(h) Maintain the official claims register for the Debtor (the "Claims Register") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Register; and specify in the Claims Register the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (e.g., secured, unsecured, priority, etc.), and (vi) any disposition of the claim;

(i) Implement necessary security measures to ensure the completeness and integrity of the Claims Register and the safekeeping of the original claims;

(j) Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

(k) Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of KCC, not less than weekly;

(l) Upon completion of the docketing process for all claims received to date for the Chapter 11 Case, turn over to the Clerk copies of the Claims Register for the Clerk's review (upon the Clerk's request);

(m) Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the Claims Register;

(n) Assist in the dissemination of information to the public and respond to requests for administrative information regarding the Chapter 11 Case as directed by the Debtor or the Court, including through the use of a case website and/or call center;

(o) If the case is converted to chapter 7, contact the Clerk's Office within three (3) days of the notice to KCC of entry of the order converting the case;

(p) Thirty (30) days prior to the close of the Chapter 11 Case, to the extent practicable, request that the Debtor submits to the Court a proposed Order dismissing the KCC and terminating the services of such agent upon completion of its duties and responsibilities and upon the closing of this Chapter 11 Case;

(q) Within seven (7) days of notice to KCC of entry of an order closing the Chapter 11 Case, provide to the Court the final version of the Claims Register as of the date immediately before the close of the case;

(r) At the close of the case, box and transport all original documents, in proper format, as provided by the Clerk's Office, to (i) the Federal Records Center, located at 14700 Townsend Road, Philadelphia, PA 19154-1096 or (ii) any other location requested by the Clerk's Office; and

(s) Provide such other processing, solicitation, balloting, and other administrative services described in the Engagement Agreement that may be requested from time to time by the Debtor, the Court, or the Clerk's Office.

6. Although the Debtor does not propose to retain KCC under section 327 of the Bankruptcy Code pursuant to the Section 156(c) Application (such retention will be sought by separate application), I caused to be submitted for review by our conflicts system the names of all known potential parties-in-interest (the "Potential Parties in Interest") in this Chapter 11 Case. The list of Potential Parties in Interest was provided by the Debtor and included, among other parties, the Debtor, current members of the Debtor's Board of Trustees, current officers of the Debtor, the Debtor's secured creditors, the Debtor's 20 largest unsecured creditors, and other parties. The results of the conflict check were compiled and reviewed by KCC professionals under my supervision. At this time, and as set forth in further detail herein, KCC is not aware of any connection that would present a disqualifying conflict of interest. Should KCC discover any new relevant facts or connections bearing on the matters described herein during the period of its retention, KCC will use reasonable efforts to file promptly a supplemental declaration.

7. To the best of my knowledge, and based solely upon information provided to me by the Debtor, and except as provided herein, neither KCC, nor any of its professionals, has any materially adverse connection to the Debtor, its creditors or other relevant parties. KCC may have relationships with certain of the Debtor's creditors as vendors or in connection with cases in which KCC serves or has served in a neutral capacity as claims and noticing agent, balloting, and/or administrative advisor for another chapter 11 debtor. However, given KCC's neutral

position as claims and noticing agent or administrative advisor in any other cases, KCC does not view such relationships as real or potential conflicts. Further, to the best of my knowledge, any such relationship is completely unrelated to the Chapter 11 Case. Accordingly, to the best of my knowledge, KCC and each of its employees are "disinterested persons," as that term is defined in section 101(14) of the Bankruptcy Code, and neither KCC nor any of its employees hold or represent an interest adverse to the Debtor's estate related to any matter for which KCC will be employed.

8.  KCC is an indirect subsidiary of Computershare Limited ("Computershare"). Computershare is a financial services and technologies provider for the global securities industry, including providing administrative transfer agent services such as maintaining records of shareholdings and share transfers. Within the Computershare corporate structure, KCC operates as a separate, segregated business unit. As such, any relationships that Computershare and its affiliates maintain do not create an interest of KCC that is materially adverse to the Debtor's estate or any class of creditors or security holders.

9.  KCC further represents that:

(a) it will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims Agent;

(b) by accepting employment in the Debtor's Chapter 11 Case, KCC waives any right to receive compensation from the United States government;

(c) in its capacity as the Claims Agent, KCC will not be an agent of the United States and will not act on behalf of the United States;

(d) it will not employ any past or present employees of the Debtor in connection with its work as the Claims Agent;

(e) it will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c);

  (f)  none of the services provided by KCC as the Claims Agent in this Chapter 11 Case shall be at the expense of the Clerk's office;

  (g)  in its capacity as the Claims Agent in this Chapter 11 Case, KCC will not intentionally; and

  (h)  it will supplement its disclosure to this Court if any facts or circumstances are discovered that would require such additional disclosure.

  10.  KCC has and will continue to represent clients in matters unrelated to the Chapter 11 Case.  In addition, KCC has had and will continue to have relationships in the ordinary course of its business with certain vendors, professionals, and other parties in interest that may be involved in the Chapter 11 Case in matters unrelated to the Chapter 11 Case.  KCC may also provide professional services to Entities or Persons that may be creditors or parties in interest in the Chapter 11 Case, which services do not directly relate to, or have any direct connection with, the Chapter 11 Case or the Debtor.

  11.  In performing the Claims and Noticing Services, KCC will charge the rates in accordance with its Engagement Agreement.  These rates are at least as favorable as the prices KCC charges in other cases in which the firm has been retained to perform similar services.

  12.  In addition, the indemnification provisions set forth in the Engagement Agreement reflect standard and customary terms of engagement contained in KCC's engagement letters both in and outside of bankruptcy.  Based on my experience, these indemnification provisions are similar to provisions in the engagement letters of other similarly situated companies in engagements both in and outside of bankruptcy.

  13.  Prior to the Petition Date, the Debtor paid KCC a retainer in the amount of $30,000 (the "Retainer").  Through the Section 156(c) Application, KCC seeks to first apply the Retainer to all prepetition invoices, which Retainer shall be replenished to the original retainer amount, and thereafter, to hold such retainer under the Engagement Agreement during the

Chapter 11 Case as security for the payment of fees and expenses incurred under the Engagement Agreement.

14. If appointed as the Claims Agent, KCC will not, without prior order from the Court authorizing KCC to do so, (a) cease providing services during the Chapter 11 Case for any reason, including nonpayment, or (b) undertake any legal representation of the Debtor, nor provide any advices of a legal nature, outside the scope of the duties outlined in the Section 156(c) Application.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Executed on March 7, 2021

*/s/ Evan Gershbein*
Evan Gershbein
Executive Vice President, Corporate Restructuring Services
*Proposed Claims and Noticing Agent of the Debtor and Debtor in Possession*